UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE WHIPPLE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>ALLIED OLD ENGLISH, INC.,<br><br>    Defendant. | 04 11641<br><br>Civil Action No.<br>RECEIPT # _____<br>AMOUNT $ _____<br>SUMMONS ISSUED ___<br>LOCAL RULE 4.1 ___<br>WAIVER FORM ___<br>MCF ISSUED ___<br>BY DPTY. CLK. ___<br>DATE ___ |

MAGISTRATE JUDGE Alexander

**COMPLAINT**

This action arises out of the sale by plaintiff The Whipple Company ("Whipple") of its food products business to defendant Allied Old English, Inc. ("Allied") pursuant to an Asset Purchase Agreement ("Agreement"). Whipple claims that Allied has breached the parties' Agreement by refusing to make royalty payments and to pay for equipment it acquired under the Agreement and has, expressly and by its conduct, repudiated its obligations under the Agreement. Whipple also claims that Allied has breached a subsequent agreement to compensate Whipple for providing Allied with the assistance of Whipple employees, and that Allied has failed to pay for goods that it purchased from Whipple unrelated to the Agreement. In this Complaint, Whipple seeks damages for Allied's various breaches of contract, specific performance by Allied of its contractual obligations pursuant to an express "specific performance" provision in the Asset Purchase Agreement, recover under quantum meruit, and entry of a declaratory judgment that Whipple has fully complied with its contractual obligations and has not caused Allied to incur $200,000 in damages and that Allied is not

1

entitled to use this pretextual claim of damage as an excuse for its failure to honor its own contractual obligations.

## PARTIES

1. Plaintiff The Whipple Company ("Whipple") is a business trust organized and existing under the laws of the Commonwealth of Massachusetts, with a principal place of business in Natick, Massachusetts.

2. Defendant Allied Old English, Inc. ("Allied") is a corporation organized and existing under the laws of the State of New Jersey, with a principal place of business in Port Reading, New Jersey.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. There is complete diversity between the parties and the amount in controversy exceeds $75,000.  4. Venue lies in this District pursuant to 28 U.S.C. §§ 1391(a) and (c), because Allied resides in this District and because a substantial part of the events giving rise to plaintiff's claims took place in this District.

## FACTS

5. Whipple was founded in 1920 as a Massachusetts business trust. It was a purveyor of fine foods, including pie fillings, jams, jellies, and other products. Whipple sold its products under several brand names, including "Grandmother's Fine Foods," as well as under private labels to distributors and other customers.

6. In 2003, Whipple decided to leave the food business and to sell its assets. In November 2003, Allied expressed interest in acquiring Whipple's business. Like Whipple, Allied

was and is in the business of manufacturing food products, including jams, jellies, sauces and other products, under its own brands as well as under private label.

7. Whipple and Allied, represented by counsel, negotiated the Agreement, which was executed on December 26, 2003. The Agreement provided for the sale of Whipple's product formulas and recipes, trademarks, brands, certain equipment, inventory, goodwill, customer lists, customer and supplier records, and contracts with other companies. The sale did not include the acquisition of Whipple's facilities.

8. The Agreement requires Allied to pay royalties to Whipple for the next seven years from sales of certain Whipple products. It initially provided in relevant part that:

> B.   Royalty and Net Sales. In addition, during the seven (7) year period after the closing date, Buyer shall pay to Seller a royalty of three (3%) percent of net sales of (I) branded items sold under any brand owned by Seller being transferred to Buyer hereunder (including without limitation the "Grandmother's" brand) to any entity; (II) private label or co-pack products sold by Buyer to Whipple Customers (as defined below) for products that Seller sold to such Whipple Customers in the 12 months prior to the date of this Agreement, and (III) private label products or co-pack products sold by Allied to any of the parties who are potential customers identified on Exhibit "2.1.B.III" . . .

Agreement, Article II, §2.1(B). The percentage amount for royalties was subsequently reduced by agreement to 2½ %). The Agreement further requires that the royalties be paid monthly:

> 2.2   Payment of Royalties-Monthly Payments. Royalty payments will be computed and paid to Whipple with an itemized statement by the end of the month immediately following the month in which the sales were paid by customer.

Agreement, Article II, §2.2.

9. The Agreement provides for Allied to reimburse Whipple for its attorneys fees and costs incurred pursuing an action to enforce the Agreement. It states in relevant part:

> 13.2   Indemnification by Buyer. Buyer shall defend, indemnify and hold Seller harmless with respect to any action . . . arising out of . . . (ii) Any misrepresentation, breach of warranty, or non-fulfillment of any covenant, agreement or obligation on the part of Buyer under this Agreement . . . The Buyer shall reimburse Seller for any and all fees, costs and

3

expenses of any kind related to the foregoing indemnification, including without limitation, attorney's fees and court costs.

Agreement, Article XIII, §13.2.

10. From the end of December 2003 into the first half of January 2004, Allied conducted due diligence on Whipple, with the opportunity to review Whipple's inventory, equipment, formulas, and books and records. During this time, Allied also ordered some goods from Whipple (and Whipple delivered such goods) in transactions unrelated to the Agreement. Allied failed to make payment for these goods. On January 20, 2004, the parties closed the transaction and Allied took ownership and control of the assets that it purchased pursuant to the Agreement.

11. Over the next few weeks, Allied transferred Whipple's assets from Whipple's location, shipping inventory, for example, to Allied's facilities in New Jersey. The parties orally agreed that Whipple would provide the aid of two of its employees in the loading of inventory onto Allied's trucks and that Allied would pay for their work. Whipple subsequently billed Allied for those services, but Allied has not made full payment.

12. In addition, Allied took possession of certain equipment that was not included in the original purchase price under the Agreement. The Agreement provided that under these circumstances, Allied would pay for this equipment:

> (ii) Equipment. Buyer may select items of Seller' [sic] equipment not included in Section 1.1.J. above which shall be valued at "forced liquidation value" in the amount set forth on the Appraisal and shall increase the Purchase Price by such amount.

Agreement, Article II, §2.1(A)(i), §2.1(A)(ii). Whipple billed Allied for these items. To date Allied has failed to pay these invoiced amounts.

13. Since the closing of the sale, Allied has successfully generated sales of Whipple products. According to an interim accounting provided by Allied dated June 8, 2004, it had by the

end of May 2004 sold a total of about $545,723.14 in Whipple products covered by the royalty provisions of the Agreement, generating an obligation to pay Whipple $13,643.08 in royalties. Allied has not paid any royalties whatsoever.

14. Instead, Allied pretextually claims that Whipple breached the Agreement by failing to transfer accurate product formulations and recipes. In addition to demanding nearly $200,000 from Whipple for alleged losses sustained, Allied asserts that it will not pay any amounts under the Agreement until Whipple has satisfied this demand. By its words and its actions, Allied has thereby repudiated its obligations under the Agreement.

15. As part of the sale, Whipple provided Allied with its formulas and recipes for hundreds of products. These recipes are in the same form and format that Whipple employed in its own kitchens. Allied claims to have had difficulty recreating some of the products in its own kitchens and argues that the problem lies with the recipes. To the contrary, Allied's problems, to the extent they occurred, stem from its improper reading of the formulas (substituting dry ounce measurements for liquid ounce measurements, for example), substitution of inferior ingredients, and use of different equipment.

16. Allied has also wrongfully and pretextually demanded payment from Whipple for allegedly missing inventory. The Agreement provided for an adjustment for the actual amount of inventory at Whipple's facilities on the following terms:

> (i) Inventory. If the aggregate replacement value of the finished and unfinished product inventory is less than Three Hundred Fifty Thousand ($350,000) Dollars, then the Purchase Price shall be reduced by the amount of the deficiency. However, if the aggregate replacement value of the finished and unfinished product inventory exceeds Three Hundred Fifty (*sic.*) ($350,000.00) Dollars, the Purchase Price shall be increased up to a maximum of $150,000.00 for such inventory . . . Any excess amount above Three Hundred Fifty Thousand ($350,000.00) Dollars payable by Allied shall be paid within three (3) months of the date of closing.

5

Agreement, Article II, §2.1.A(i).

17. Prior to the close of the sale, Whipple, on at least two occasions, verified that the inventory listed in the Agreement was indeed present at Whipple's facilities. Moreover, pursuant to this provision, the parties met at Whipple's facilities on January 19, 2004, for a final inventory count and adjustment to the purchase price of the Agreement. Allied commenced a physical inspection of the inventory, but decided to dispense with a complete review and waive any adjustments for missing inventory, if Whipple would agree to reduce the value of the inventory from the book value of $359,654.71 to $300,000.00. Whipple agreed, the reduction was acknowledged in writing, and the purchase price was reduced by $50,000 pursuant to the provisions of Article II, §2.1.A(i) of the Agreement.

## COUNT I

### Breach of the Asset Purchase Agreement

18. Plaintiff repeats and incorporates by reference the allegations of paragraphs 1 through 17 of the Complaint.

19. The Agreement is a binding contract between Whipple and Allied. Pursuant to the Agreement, Allied is obligated to pay Whipple royalties from the sales of certain Whipple products.

20. Allied has breached the Agreement by failing to make any royalty payments to date and by repudiating its obligation to make payments in the future unless Whipple satisfies Allied's demand for damages arising from the sale.

21. The Agreement also requires Allied to pay for equipment that it acquired from Whipple.

22.  Allied breached the Agreement by failing to pay for equipment that it transferred from Whipple.

23.  Accordingly, Whipple is entitled to recover from Allied the amounts owed for royalties and equipment, plus interest, attorney's fees, and other costs of collection.

## COUNT II

### Specific Performance of the Agreement

24.  Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 22 of the Complaint.

25.  Allied has breached the Agreement by refusing to make payment for royalties or transferred equipment. Further, Allied has repudiated its obligation to pay royalties until Whipple satisfies Allied's wrongful and pretextual demand for damages arising from the sale.

26.  The Agreement specifically provides for the remedy of specific performance for a breach of the Agreement by Allied. It provides that:

> 12.10 Specific Performance. The Buyer hereby agrees that in the event of a breach by the Buyer of this Agreement, money damages would not be an adequate remedy to the Seller or its affiliates for such breach, and, even if money damages <u>may be theoretically</u> adequate, it would be impossible to ascertain or measure with any degree of accuracy the damages sustained by the Seller or its affiliates therefrom. Accordingly, if there should be a breach or threatened breach by the Buyer of provisions of this Agreement, the Seller and its affiliates shall be entitled from a court of competent jurisdiction to an order for specific performance and an injunction restraining Buyer from any breach without showing or proving actual damage . . . The Seller shall also be entitled to an order or judgment for its legal fees, costs of suit and related expenses for such proceedings.

Agreement, Article 12, § 12.10 (emphasis in original).

27.  Accordingly, Whipple is entitled to an order requiring specific performance from Allied of its obligations under the Agreement.

7

## COUNT III

### Breach of Oral Agreement for Employee Services

28. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 27 of the Complaint.

29. Allied and Whipple agreed that Whipple would provide manpower assistance to help Allied with the transfer of inventory and equipment from Whipple's facilities, and Allied would pay for the work of Whipple's employees. Whipple provided the assistance as agreed.

30. Whipple has billed Allied, but Allied has failed to make any payment. Accordingly, Allied is liable for the services provided.

## COUNT IV

### Quantum Meruit for Employee Services

31. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 30 of the Complaint.

32. At Allied's request, Whipple assisted Allied in its removal of inventory and equipment from Whipple's facilities. Whipple's work conferred substantial benefit to Allied.

33. Whipple has billed Allied, but Allied has failed to make any payment. Accordingly, Allied is liable for the reasonable value of the services provided.

## COUNT V

### Declaratory Judgment that Whipple Has Performed Its Contractual Obligations

34. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 33 of the Complaint.

35. Defendant has claimed that Whipple breached the Agreement by failing to convey accurate or correct product formulas and recipes. Allied has demanded payment of nearly $200,000 for alleged damages that it claims to have sustained as a result.

36. Whipple provided Allied with its formulas and recipes in the same form and format that Whipple employed in its own kitchens. To the extent that Allied experienced any problems recreating Whipple's products, the fault (if any) lies with Allied, not Whipple.

37. Some three months after the closing of the sale, by letter dated April 21, 2004, Allied raised the issue of "missing inventory," claiming that Whipple breached the Agreement by failing to deliver about $30,000 worth of inventory listed in the Agreement.

38. Whipple responded by letter dated April 29, 2004, reminding Allied that it had the opportunity during its due diligence period to confirm the contents of Whipple's inventory, but in lieu of verifying each item count and adjusting the purchase price of the sale, the parties had agreed to value the inventory in the Agreement at $300,000, rather than the recorded book value of $359,654.71, and to adjust the purchase price accordingly. Whipple did not remove any inventory subsequent to that agreement.

39. Upon information and belief, much of Allied's so-called "missing" inventory is not missing – Allied simply kept sloppy records of where it shipped the inventory or abandoned it pursuant to the terms of the Agreement. For example, Allied failed to use bills of lading when shipping inventory from Whipple's facilities. Whipple had no obligation to track inventory after Allied had obtained title and control over it. Nonetheless, Whipple was able through its observations to inform Allied in its letter of April 29, 2004, of what Allied had done with all but about $500 of the "missing" inventory.

40. Accordingly, Whipple is entitled to a declaratory judgment that Whipple has performed its obligations under the Agreement with respect to the delivery of product formulas and inventory.

## COUNT VI

### Failure to Pay for Goods Delivered

41. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 40 of the Complaint.

42. Prior to the closing of the Agreement, and in a transaction unrelated to the Agreement, Allied ordered (and Whipple delivered) certain products from Whipple in the ordinary course of business.

43. Whipple invoiced Allied for these products but Allied has refused to make payment.

44. Whipple is entitled to payment for its goods delivered to Allied.

WHEREFORE, plaintiff Whipple requests that the Court:

A. Enter judgment against Allied and award damages to plaintiff Whipple in the full amounts owed for royalties under the Agreement;

B. Enter judgment against Allied and award damages to plaintiff Whipple for equipment, goods, and services that Whipple provided to Allied;

C. Enter an order requiring specific performance from Allied of its obligations under the Agreement;

D. Enter judgment in Whipple's favor, determining and declaring that Whipple has properly performed its obligations under the Agreement and that Allied is not entitled to withhold any payment or performance under the Agreement as a result of any alleged breaches by Whipple;

E. Award Whipple its attorneys' fees incurred in this action, together with its costs, fees, and expenses, as provided in the Agreement;

F. Award Whipple prejudgment interest, reasonable attorneys' fees, and costs of suit; and

G. Award such other and further relief as the Court may deem just and appropriate.

Respectfully submitted,

THE WHIPPLE COMPANY

By its attorneys,

Dated: July 23, 2004

*[signature]*
Marjorie Sommer Cooke (BBO# 097800)
Edward S. Cheng (BBO #634063)
COOKE, CLANCY & GRUENTHAL, LLP
150 Federal Street
Boston, MA 02110
(617) 428-6800

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) The Whipple Company
   v. Allied Old English, Inc.

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

   ___  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ___  II.   195, 368, 400, 440, 441-444, 540, 550, 625, 710, 720, 730,
              740, 790, 791, 820, 830, 840, 850, 890, 892-894, 895, 950.

   X    III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
              315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
              380, 385, 450, 891.

   ___  IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
              690, 810, 861-865, 870, 871, 875, 900.

   ___  V.    150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(E)).
   None

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?
   None

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? No
   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY? (SEE 28 USC 2403) ___

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC 2284? No

7. DO ALL PARTIES IN THIS ACTION RESIDE IN THE CENTRAL SECTION OF THE DISTRICT OF MASSACHUSETTS (WORCESTER COUNTY) - (SEE LOCAL RULE 40.1(C)).   YES_____ ___OR IN THE WESTERN SECTION (BERKSHIRE, FRANKLIN, HAMPDEN OR HAMPSHIRE COUNTIES)? - (SEE LOCAL RULE 40.1(D)).   YES_____

8. DO ALL OF THE PARTIES RESIDING IN MASSACHUSETTS RESIDE IN THE CENTRAL AND/OR WESTERN SECTIONS OF THE DISTRICT?   YES_____ (a)   IF YES, IN WHICH SECTION DOES THE PLAINTIFF RESIDE?_____

9. IN WHICH SECTION DO THE ONLY PARTIES RESIDING IN MASSACHUSETTS RESIDE? Eastern

10. IF ANY OF THE PARTIES ARE THE UNITED STATES, COMMONWEALTH OF MASSACHUSETTS, OR ANY GOVERNMENTAL AGENCY OF THE U.S.A. OR THE COMMONWEALTH, DO ALL OTHER PARTIES RESIDE IN THE CENTRAL SECTION_____ OR WESTERN SECTION_____

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME   Marjorie Sommer Cooke
ADDRESS   Cooke, Clancy & Gruenthal, LLP, 150 Federal Street
TELEPHONE NO.   (617) 428-6800

(Category.frm - 09/92)

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
The Whipple Company

## DEFENDANTS
Allied Old English, Inc.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Middlesex
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Marjorie Sommer Cooke, Esq.
Edward S. Cheng, Esq.
Cooke, Clancy & Gruenthal, LLP
150 Federal Street
Boston, MA 02210   (617)428-6800

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

28 U.S.C. Section 1332. Action alleging breach of contract and seeking declaratory judgment with respect to parties rights and obligations under Asset Purchase Agreement.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ YES  ☒ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____